# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

JPMORGAN CHASE & CO.,                                                 **PLAINTIFF**
**J.P. MORGAN TRUST COMPANY, NA**

**V.**                                                       **CASE NO. 4:05CV212**

**DELORES CONEGIE, by and through**
**her next friend DEOLA LEE**                                         **DEFENDANT**

## <u>MEMORANDUM OPINION</u>

This cause comes before the Court on the defendants' motion to dismiss and the plaintiffs' motion to compel arbitration [5-1; 11-1].  The Court has reviewed the briefs and exhibits and is prepared to rule.

The plaintiffs are JPMorgan Chase & Company and J.P. Morgan Trust Company,NA (collectively "JPMorgan").  The defendant is Delores Conegie, by and through her next friend, Deola Lee.  In 2000, Conegie was admitted to the Autumn Leaves Nursing Home, where she remained a resident until the filing of the state court lawsuit underlying this action.  When Conegie was admitted, her mother, Lee, signed the nursing home agreement.  That agreement contained an arbitration clause which purported to require the Resident (i.e. Conegie) and/or her Responsible Party (Lee) to submit any legal claims against the nursing home to arbitration. The arbitration clause was in a conspicuous font, and was introduced by a bold-face title stating "ARBITRATION - <u>PLEASE READ CAREFULLY</u>," next to which was a line which Deola Lee initialed. The arbitration clause also stated in boxed text: "The parties understand and agree that by entering this Arbitration Agreement they are giving up and waiving their constitutional right to have any claim decided in a court of law before a judge and a jury."

Notwithstanding this arbitration clause, Conegie, by and through Lee, filed an action in the Washington County Circuit Court for damages stemming from injuries Conegie received while under

the nursing home's care. JPMorgan, which was alleged by Conegie to "control" the nursing home, then filed this action to compel arbitration. Conegie has moved to dismiss, while JPMorgan has moved for summary judgment.

Conegie has raised numerous arguments in opposition to arbitration, most of which are obviously without merit. One argument, however, does have salience – Conegie's argument that Deola Lee did not have the legal authority to sign the arbitration agreement on her behalf. The Court recently addressed this argument in another case, and was persuaded by the reasoning used by Judge Bramlette in Mariner Health Care, Inc. v. Estate of Rhodes, Civil Action 5:04cv217 (September 27, 2005). There, Judge Bramlette was confronted with an elderly woman named Sylvester Rhodes was admitted to a nursing home with a family member signing the relevant paperwork, including the arbitration clause which the plaintiff Mariner had sought to invoke. It was undisputed that Rhodes did not sign the agreement and apparently would not have been competent to do so. Mariner, however, argued that Rhodes became bound by the agreement because her daughter Katherine signed as her legal representative, while the Estate argued that Katherine Rhodes lacked the legal capacity to bind her mother to an arbitration agreement.

Judge Bramlette reasoned that in order to be able to bind her mother to the arbitration agreement, Mariner needed to show that Katherine Rhodes had authority to act as Sylvester's agent. Judge Bramlette then considered the three potential grounds for finding agency authority. The first such ground was the existence of express or implied authority, which was wholly lacking, as no documentation or evidence had been provided by Mariner to show that Sylvester gave her daughter authority to act as her agent for the purposes of signing an arbitration agreement.

Next, Judge Bramlette considered whether any apparent authority existed which might have given Katherine Rhodes the power to bind Sylvester to the arbitration agreement. Judge Bramlette

noted that apparent authority is to be "determined from the acts of the principal and requires reliance and good faith on the part of the third party." Terrain Enters., Inc. v. Western Casualty & Surety Co., 774 F.2d 1320, 1322 (5th Cir. 1985)(citing Tarver v. J.E. Sanders Cotton Mill, 192 So.2d 17 (Miss. 1939)). Mariner had alleged no act on the part of Sylvester Rhodes indicating that she authorized Katherine to act as her agent in the matter of the arbitration agreement, and so Judge Bramlette held that Mariner had failed in its burden to show that apparent authority existed.

Finally, Judge Bramlette considered whether any statutory authority existed which might allow a surrogate to make healthcare decisions for an incompetent or incapacitated patient absent a pre-authorized agency relationship. He noted that Miss. Code Ann. § 41-41-211 did grant certain persons the authority to make healthcare decisions on behalf of a patient without the capacity to make such decisions for herself. Judge Bramlette, after careful review of § 41-41-211, concluded that the statute limited its grant of authority to allowing surrogates to make "health-care decisions" for the patient, and binding legal decisions regarding waiver of the patient's right to a jury trial did not fall under the rubric of "health-care decisions."

Although there were no Mississippi cases directly on point to support Judge Bramlette's reasoning, he did find persuasive authority from two other cases: Pagarigan v. Libby Care Center, Inc., 120 Cal. Rptr. 2d 892 (Cal. Ct. App. 2002)(applying California law granting surrogate decision-making power), which was cited by Conegie in the case at bar, and Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296 (Fla. Dist. Ct. App. 2005)(applying similar Florida law). Judge Bramlette also considered In re Ledet, 2004 WL 2945699 (Tex. App. Dec. 22, 2004) which came to a contrary conclusion, but concluded that the Mississippi law was more susceptible to the logic of Pagarigan and Blankfeld. Consequently, even if Katherine Rhodes was considered a surrogate decision-maker under § 41-41-211, her authority to make "health-care decisions" would not extend to signing an

arbitration agreement binding on her mother.  Judge Bramlette came to an identical conclusion in Mariner Health Care, Inc. v. Guthrie, 5:04cv218 (S.D. Miss. August 24, 2005).

Recently, in Mariner Health Care, Inc. v. Green, 4:04cv246 (N.D. Miss. June 7, 2006), this Court adopted Judge Bramlette's reasoning and concluded that, where a responsible party signs an arbitration agreement that is part of a nursing home admission agreement on behalf of an incompetent patient, the party seeking to compel arbitration must show some type of agency relationship between the responsible party and the patient in order for the arbitration clause to be enforceable.  Such a relationship may be shown either through a showing that the patient expressly or impliedly granted the responsible party authority to act as her agent or by a showing that the patient acted in a manner which would lead others to believe that the responsible party had apparent authority to act on her behalf.  However, merely making a health-care decision on the patient's behalf pursuant to Miss. Code Ann. § 41-41-211 does not make the responsible party a legal representative capable of waiving the patient's right to a jury trial.

Applying this analysis to the case at bar, the Court agrees with Conegie that Deola Lee did not have the legal right to sign away Conegie's rights to a jury trial by initialing the arbitration clause.  Accordingly, JPMorgan's motion to compel is DENIED, and Conegie's motion to dismiss is GRANTED.  A separate order to that effect shall issue this day.

This is the 12th day of June, 2006.

   __/s/ Michael P. Mills_____
   **UNITED STATES DISTRICT JUDGE**